NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0594n.06

Case No. 13-4060

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Aug 05, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SEBASTIAN ENRIQUE DE LEON-REYNOSO, | ) ) ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent. | ) ) | |

BEFORE: SILER, GILMAN, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge. Petitioner Sebastian De Leon-Reynoso ("De Leon") seeks review of the Board of Immigration Appeals' ("BIA") decision affirming an Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), protection under the Convention Against Torture ("CAT"), and voluntary departure. For the following reasons, we **DENY** the petition.

**BACKGROUND**

De Leon is a native and citizen of Guatemala who illegally entered the United States in 2002. After he was issued a Notice to Appear, he sought relief from removal and applied for asylum, withholding of removal, protection under CAT, and voluntary departure.

At his hearing, De Leon testified that his first problem in Guatemala concerned a confrontation with a local gang in 2000. He and his brother were intimidated by gang members wanting them to join the gang, but De Leon refused because it went against his beliefs as an evangelical Christian. When they refused, the gang began assaulting De Leon and his brother. They received bruises, but did not require medical treatment. De Leon also testified that the gang threatened to kill him if he did not join the gang the next time.

De Leon testified that, after this first incident, he and his brother moved to Guatemala City to escape the gang. However, later in his testimony, De Leon stated that there was a second incident with the gang members in 2001, prior to his move to Guatemala City. After he moved to Guatemala City, the police accosted him on four occasions, each time demanding money. De Leon testified that he fears for his safety upon his return to Guatemala. He believes that the gang members will assault him, that the police will shake him down for money, and that there is no safe place in Guatemala where he could live.

The IJ ordered De Leon to be removed to Guatemala and denied De Leon's applications for asylum, withholding of removal, protection under CAT, and voluntary departure. As a threshold issue, the IJ made an adverse credibility determination against De Leon, stating that his answers to questions were "occasionally evasive, and on some occasions extremely evasive." In arriving at this finding, the IJ referenced inconsistencies between De Leon's testimony, his asylum application, and the evidence he submitted in support of his applications.

The IJ also denied De Leon's asylum claim because it was statutorily barred. Undisputed evidence showed that De Leon entered the United States in 2002, but did not file his asylum application until 2010. Therefore, the one-year statute of limitations had expired for De Leon's asylum claim. De Leon asserted that his language barrier qualified as an extraordinary

circumstance exempting him from the bar, but the IJ found no "statutory or case law that holds that a language barrier is a cognizable extraordinary circumstance that would justify a late filing of an application."

The IJ found that the asylum claim failed on the merits as well. The IJ determined that De Leon did not establish that he suffered past persecution as a result of a protected characteristic. De Leon asserted three protected characteristics: being of Mayan ethnicity, being an evangelical Christian, and being a member of a particular social group, namely a "[y]oung Guatemalan male[] who refuse[s] induction into gangs for religious and moral reasons and face[s] gang reprisals as a result of refusal to become [a] gang member." However, the IJ found that De Leon had not been persecuted by the gangs on the basis of his alleged protected characteristics and that his purported social group was not cognizable. The IJ likewise found no indication that the police shook down De Leon for money because of those characteristics. Rather, the IJ attributed De Leon's treatment to "unscrupulous police shaking down a citizen for money." The IJ also found that the treatment to which De Leon testified did not rise to the requisite level of persecution because De Leon merely suffered bruises at the hands of the gang members and was able to walk or run away from these incidents.

Next, the IJ found that, because De Leon failed to prove that he had experienced persecution in the past on account of a protected characteristic, he did not gain the benefit of a presumption of a well-founded fear of future persecution. The IJ then found that the record did not provide sufficient evidence of a well-founded fear of future persecution because De Leon's fear was not both subjectively real and objectively reasonable.

In sum, the IJ determined that De Leon failed to show past persecution or a well-founded fear of future persecution on account of a protected characteristic and thus failed to prove that he

was a refugee eligible for asylum. Because De Leon's asylum claim failed on the merits, the IJ found that he was likewise not eligible for withholding of removal because withholding of removal involves a higher standard of proof than asylum.

The IJ next denied De Leon's claim of protection under CAT, holding that De Leon failed to prove that it is more likely than not that he will be subjected to torture by Guatemalan officials. Though De Leon argued that the police in Guatemala were corrupt and that they acquiesced in his mistreatment, the IJ pointed to the Department of State Country Report, which indicated that the government of Guatemala is making significant efforts to prosecute police officers and others who are involved in criminal activities. Therefore, the IJ found that De Leon failed to demonstrate his eligibility for protection under CAT.

Finally, the IJ denied De Leon's request for voluntary departure. The IJ determined that De Leon did not meet his burden of proving that he had been a person of good moral character for five years immediately preceding his request for post-conclusion voluntary departure because of his 2010 conviction for using false documents, including a Social Security card and a Puerto Rican birth certificate, in an attempt to obtain an Ohio driver's license, and representing himself as a United States citizen in that process.

On appeal, the BIA found that De Leon received a full and fair hearing before the IJ. It then deferred to the IJ's decision in assessing De Leon's remaining arguments. The BIA affirmed the IJ's holding that De Leon's application for asylum was procedurally barred because his application fell outside the one-year filing requirement. The BIA did not reach the merits of De Leon's asylum claim, but instead addressed the merits of his application for withholding of removal. It determined that the IJ's adverse credibility determination was well-supported by the record because there were several inconsistencies between De Leon's testimony, his other proof,

and his asylum application. Furthermore, the BIA found that De Leon's alleged mistreatment by gang members and police officers was not sufficiently severe to amount to persecution. Finally, the BIA found that De Leon's burden of proof for withholding of removal was not met because he did not demonstrate that his life or freedom would be threatened in Guatemala in the future.

Additionally, the BIA affirmed the IJ's denial of De Leon's claims for protection under CAT and for voluntary departure. It determined that De Leon did not establish that he will likely be tortured with the consent or acquiescence of a public official in Guatemala, and he therefore did not meet his burden to prove his CAT claim. The BIA also stated that De Leon did not provide any persuasive argument to reverse the IJ's denial of voluntary departure.

### STANDARD OF REVIEW

Where, as here, the BIA reviews the IJ's decision and issues a separate opinion, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). To the extent the BIA adopted the IJ's reasoning, however, we review the IJ's decision. *Id.* We review the factual determinations of the IJ and the BIA under the substantial-evidence standard. *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010). "Under this standard, we will not reverse a factual determination unless we find that the evidence not only supports a contrary conclusion, but *compels* it." *Id.* (internal quotations marks omitted).

We review de novo "an alleged due-process violation based upon the manner in which an IJ conducts a deportation hearing." *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 391 (6th Cir. 1998). However, "the IJ is entitled to broad discretion in conducting that hearing." *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 553 (6th Cir. 2003), *abrogated on other grounds by Almuhtaseb v. Gonzales*, 453 F.3d 743, 747 (6th Cir. 2006).

**DISCUSSION**

**I.      De Leon's Application**

**A.  Adverse Credibility Determination**

De Leon challenges multiple aspects of the IJ's and BIA's denial of his applications for asylum, withholding of removal, and protection under CAT. As a preliminary matter, we will address the IJ's adverse credibility determination against De Leon, which applies to all three claims. *See, e.g., Hassan v. Gonzales*, 403 F.3d 429, 434-35 (6th Cir. 2005).

An alien who seeks asylum must establish that he is a "refugee." 8 C.F.R. § 208.13(a). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." *Id*. "Accordingly, a credibility determination forms the initial consideration in an IJ's asylum claims analysis." *Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th Cir. 2007). An adverse credibility determination is a finding of fact that does not have to go to the heart of the claim or any other relevant factor. 8 U.S.C. § 1158(b)(1)(B)(iii). The burden is on the applicant to satisfy the IJ that his "testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." *Id*. at § 1158(b)(1)(B)(ii).

Where an applicant's adverse credibility determination prevents him from establishing his eligibility for asylum, "he [likewise] cannot satisfy the more stringent standards necessary for withholding of removal . . . or relief under CAT." *Hassan*, 403 F.3d at 435. Furthermore, an adverse credibility determination "provides an alternative ground for upholding the denial of asylum and a primary ground for denying the other claims" of withholding of removal and protection under CAT. *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009).

The IJ supported his adverse credibility finding with four specific instances where De Leon's testimony was incongruent with his asylum application and corroborating evidence. The

discrepancies can be properly viewed as attempts by De Leon to enhance his persecution claims. In particular, the claim that he was attacked by gang members in 2001 was mentioned at the hearing for the first time and serves to bolster De Leon's argument that he was persecuted by gang members by creating the perception that the gang violence against him was ongoing. We uphold the IJ's and BIA's adverse credibility finding because the IJ laid out numerous grounds to support the finding, *Bah v. Gonzales*, 462 F.3d 637, 640 (6th Cir. 2006), and because the record does not compel a contrary conclusion. *Bonilla-Morales*, 607 F.3d at 1136.

### B. Asylum

The IJ and the BIA held that De Leon was statutorily barred from applying for asylum because he filed his application beyond the one-year statute of limitations and because he failed to demonstrate extraordinary circumstances to excuse his late filing. Because we may review asylum applications denied for untimeliness only where the petitioner seeks review of constitutional claims or matters of statutory construction, neither of which has been presented here, we are jurisdictionally barred from reviewing De Leon's application for asylum and the accompanying statutory bar. *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007).

### C. Withholding of Removal

Because the IJ found that De Leon failed to establish eligibility for asylum on the merits, the IJ held that withholding of removal should likewise be denied because of the higher standard it requires. The BIA then denied the merits of the withholding of removal claim, using the factual findings described by the IJ in its analysis of De Leon's asylum claim. Because we find that De Leon is statutorily barred from his application for asylum, we will consider the merits of his withholding of removal claim, utilizing the interchangeable analyses used for both asylum and withholding of removal. *See, e.g., Ben Hamida v. Gonzales*, 478 F.3d 734, 741 (6th Cir. 2007)

("An applicant may be granted withholding of removal based on the same five grounds as asylum. However, the standard for withholding of removal is more stringent. . . . Because of this higher burden of proof, an applicant who fails to meet the statutory eligibility requirements for asylum must necessarily fail to meet the requirements for withholding of removal.").

As a preliminary matter, an adverse credibility finding provides a primary ground for denying a claim for withholding of removal. *El-Moussa*, 569 F.3d at 257. Because the IJ made an adverse credibility determination that we find conclusive, the record does not compel the conclusion that De Leon is eligible for withholding of removal.

The merits of De Leon's arguments regarding his request for withholding of removal are likewise unavailing. The IJ and the BIA found that De Leon's mistreatment in Guatemala was not sufficiently severe to amount to persecution and that De Leon did not establish that any alleged past persecution was inflicted upon him as a result of a protected characteristic.

Although De Leon argued below that he was being persecuted due to his Mayan ethnicity, his evangelical Christian faith, and his membership in a particular social group, he raises only the social-group argument before us. "A social group is a group of individuals who share a common, immutable characteristic." *Bonilla-Morales*, 607 F.3d at 1137 (internal quotation marks and citation omitted). De Leon defined his social group as young Guatemalan males who refuse induction into gangs for religious and moral reasons and face gang reprisals as a result of refusal to become gang members. The IJ found that "persons subjected to gang recruitment who resisted based on personal, moral, and religious opposition to gangs[] do not constitute a cognizable particular social group." He thus found that De Leon's persecution claim lacked a nexus to a protected characteristic. The IJ additionally found that De Leon's testimony as to his treatment by gang members did not rise to the level of persecution because he suffered

no injuries other than bruising. He likewise found that De Leon's claimed treatment by the Guatemalan police lacked nexus to any protected characteristic because it was "unscrupulous police shaking down a citizen for money," unrelated to De Leon's claimed particular social group. Therefore, the IJ held that De Leon failed to prove past persecution based on a protected characteristic. The BIA agreed with the IJ's holding.

The IJ's and BIA's factual determination that De Leon failed to prove past persecution based on a protected characteristic is supported by substantial evidence and does not compel a contrary conclusion. *Bonilla-Morales*, 607 F.3d at 1136. De Leon's claimed harm was not sufficiently severe or pervasive to qualify as persecution. More importantly, De Leon's claimed particular social group does not qualify as a protected characteristic. He attempts to liken his purported social group to cases where we have found that former gang members are a particular social group due to the immutability of their former gang membership. *See, e.g., Urbina-Mejia v. Holder*, 597 F.3d 360, 365-67 (6th Cir. 2010). However, a person who steadfastly opposes a gang's recruiting efforts is not akin to an ex-gang member who fled his home country to escape the gang and who would be recognized as an ex-gang member upon his return by both his former gang and rival gangs. *See id.* at 366-67. Therefore, without a protected characteristic, there can be no nexus with alleged persecution, and his claim for withholding of removal necessarily fails.

Turning to De Leon's claim that he has a well-founded fear of future persecution, he claimed that he feared being a victim of gang violence, extortion, and kidnapping, and that he feared he would be persecuted on account of his particular social group. As to his fear of gang violence, extortion, or kidnapping, the IJ found that, "while this may be a legitimate fear, it is not a fear that has any nexus to any of the protected characteristics," and did not entitle De Leon to asylum or withholding of removal. As to his claimed fear of persecution based on his

membership in a particular social group, the IJ found that De Leon's "own expert witness . . . testified that [De Leon] is no longer in the age range where he will be a target for recruitment by gangs. Thus, even if this were a cognizable particular social group, it is a particular social group into which [De Leon] no longer fits." Therefore, the IJ held that De Leon did not present sufficient evidence to establish a well-founded fear of future persecution based on a protected characteristic. The BIA agreed with the IJ's holding.

The IJ's and the BIA's factual determination that De Leon failed to establish a well-founded fear of future persecution based on a protected characteristic is supported by substantial evidence and does not compel a contrary conclusion. *Bonilla-Morales*, 607 F.3d at 1136. Furthermore, his alleged fears would not be unique to his purported social group—they are fears that are likely shared by most Guatemalan citizens. In sum, the record does not compel the conclusion that De Leon is eligible for withholding of removal because De Leon has not shown that he is more likely than not to be persecuted in Guatemala based on his membership in a particular social group.

### D.  Protection under CAT

De Leon argues that he is eligible for relief under CAT because the testimony and exhibits show that the Guatemalan government would either persecute him or willfully acquiesce in his persecution.  As a preliminary matter, an adverse credibility finding provides a primary ground for denying protection under CAT. *El-Moussa*, 569 F.3d at 257. Because the IJ made an adverse credibility determination that we find conclusive, the record does not compel the conclusion that De Leon is eligible for protection under CAT.

Furthermore, the record does not compel the conclusion that Guatemalan authorities would torture or acquiesce in the torture of De Leon. To be eligible for protection under CAT, a

petitioner must establish that it is more likely than not that he would be tortured if removed to his home country. 8 C.F.R. § 1208.16(c)(2). Factors relevant to determining the risk of torture include, *inter alia*, the possibility of future torture, evidence of past torture, and evidence that the petitioner could relocate to a part of the country of removal where he is not likely to be tortured. *Id.* at § 1208.16(c)(3).

The IJ found there was no indication of any likelihood that De Leon would be tortured in Guatemala, "let alone tortured with the acquiescence of a government official or person acting in an official capacity." The IJ further found that the Country Report indicated that Guatemala's government was making a significant concerted effort to punish law enforcement corruption. The BIA agreed with the IJ's determination. Additionally, De Leon's encounters with the police were, at most, demands for money, which do not rise to the level of severe pain and suffering required for torture by government officials. Therefore, the IJ's and the BIA's factual determination that De Leon would not be tortured by Guatemalan officials, or at their acquiescence, is supported by substantial evidence and does not compel a contrary conclusion. *Bonilla-Morales*, 607 F.3d at 1136.

### E.  Voluntary Departure

De Leon also argues that the IJ and the BIA erred in denying his application for voluntary departure because the IJ improperly found that he was not a person of good moral character. We lack subject matter jurisdiction over appeals from a denial of a request for voluntary departure unless the petitioner raises a constitutional claim or a question of law. 8 U.S.C. §§ 1229c(f), 1252(a)(2)(B)(i), 1252(a)(2)(D). De Leon's argument is merely that the IJ made improper factual findings; therefore, we lack jurisdiction and cannot review this claim.

## II.     Full and Fair Hearing

Finally, De Leon argues that he did not receive a full and fair hearing that comported with due process, and raises multiple issues in support. We agree with the BIA that De Leon received a full and fair hearing.

First, De Leon argues that the IJ demonstrated significant and prejudicial bias against him. He argues that the IJ's questions, interruptions, and admonishments had a chilling effect on his testimony. Although an alien is guaranteed due process at his hearing, an IJ is afforded broad discretion to control and conduct hearings. *See Mikhailevitch*, 146 F.3d at 391; *see also Castellano-Chacon*, 341 F.3d at 553 (noting that aliens are afforded a full and fair hearing under due process, but that the IJ is entitled to broad discretion in conducting the hearing). IJs are statutorily authorized to "receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses" in conducting the alien's hearing. 8 U.S.C. § 1229a(b)(1). Therefore, a petitioner cannot show that a judge's questioning of witnesses amounts to bias when the questioning is designed to aid in fully developing the factual record. *Abdulahad v. Holder*, 581 F.3d 290, 296 (6th Cir. 2009). Further, a petitioner cannot establish bias based on a judge's "expressions of impatience, dissatisfaction, annoyance, and even anger." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

De Leon's claim is merely conjecture not supported by the record because there is no evidence that De Leon would have testified any differently with a more "supportive" IJ. Even De Leon said in his brief that the admonishments "probably" had a chilling effect on his testimony, so this is mere speculation. Further, the record does not indicate that the IJ acted beyond the bounds of his broad discretion in conducting the hearing. De Leon argues that the IJ admonished him to give only yes/no answers, truncated witness testimony, and found that De Leon was

nonresponsive to his questions when De Leon was trying to offer answers. However, the IJ was authorized to examine the witnesses, and his questions were designed to fully develop the factual record. He was likewise allowed to control the hearing by requiring De Leon to give yes/no answers or by disallowing irrelevant lines of questioning. Therefore, the IJ acted within his discretion at De Leon's hearing.

Second, De Leon argues that the IJ discounted the testimony of his expert witness, who demonstrated his superior knowledge regarding country conditions in Guatemala. However, the IJ found that the expert "overall was credible" and had "some level of expertise." The IJ even used certain of the expert's testimony in reaching the IJ's conclusions regarding De Leon's application, particularly that De Leon would be safe moving to certain areas of Guatemala and that De Leon was beyond the age-range for gang recruitment. Therefore, not only did the IJ not discount the expert's testimony, he actually relied on it.

Third, De Leon argues that the IJ made a negative inference about his credibility because he requested a change in translators from an Ixil-speaking translator to a Spanish-speaking translator. The IJ mentioned De Leon's change of translators in his oral decision and found that De Leon's earlier claim that he was not fluent in Spanish was at least disingenuous. However, the IJ did not cite this incident as an example supporting his adverse credibility finding, but instead made four specific findings based on discrepancies between De Leon's testimony, asylum application, and proffered corroborating evidence. Therefore, the record does not indicate that the IJ improperly relied on the translator incident in determining that De Leon lacked credibility. Relatedly, De Leon argues that he was denied a full and fair hearing because there were issues in translation. However, De Leon failed to raise this argument before the BIA and has thus failed to exhaust it; therefore, we may not review it. 8 U.S.C. § 1252(d)(1).

Fourth, De Leon argues that the IJ referenced three exhibits that were not properly admitted into evidence, which was a detriment to De Leon's case. He first argues that the IJ referenced his ICE intake form, even though it was specifically excluded from the record, and that the document contained potentially prejudicial information that could have swayed the IJ's determination that he lacked credibility. At De Leon's hearing, the IJ marked the form as Exhibit 2; however, he withdrew the exhibit upon De Leon's objection. Furthermore, the IJ did not reference the form in his adverse credibility determination. Therefore, the record does not indicate that the IJ improperly relied on excluded information in determining that De Leon lacked credibility.

De Leon also argues that the IJ admitted two exhibits that were the product of the IJ's own research—one, the Department of State International Religious Freedom Report and, two, the Country Report—which were not furnished ahead of time and were also not relevant. However, he did not object to the introduction of those documents as exhibits. Because he failed to raise this argument before the BIA, he has failed to exhaust it and we may not review it. 8 U.S.C. § 1252(d)(1).

**REVIEW DENIED**.